IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee*,

*v.*

APRIL LYNN GOMEZ, *Appellant*.

No. 1 CA-CR 24-0659

FILED 07-29-2026

---

Appeal from the Superior Court in Maricopa County
No. CR2019-002076-001
The Honorable Laura Giaquinto, Commissioner

**REVERSED AND REMANDED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Rebecca Jones, Evan Ridley (argued)
*Counsel for Appellee*

Law Office of Randal B. McDonald, Phoenix
By Randal Boyd McDonald (argued)
*Counsel for Appellant*

---

**OPINION**

---

Judge D. Andrew Gaona delivered the opinion of the Court, in which Presiding Judge David B. Gass[1] joined. Judge Anni Hill Foster concurred in part and dissented in part.

---

**G A O N A**, Judge:

**¶1**　　　　In November 2019, a jury convicted April Gomez of two counts of aggravated driving under the influence at a trial she didn't attend and during which her attorney presented no witnesses or exhibits. The superior court found Gomez's absence was voluntary under Arizona Rule of Criminal Procedure ("Rule") 9.1 because she'd been advised in open court of her original September 2019 trial date and that the trial would proceed in her absence. Gomez appeals, arguing the superior court's voluntariness finding was structural error.

**¶2**　　　　The Sixth Amendment's Confrontation Clause grants criminal defendants like Gomez the right to be present for every stage of trial to confront their accusers, assist in their defense, and testify if they choose. *See Illinois v. Allen*, 397 U.S. 337, 338 (1970). Though a defendant can waive that right and Rule 9.1 permits a court to presume a voluntary waiver at times, "proceedings in criminal cases held outside the defendant's presence are fraught with danger and should be conducted . . . only where the record clearly shows that the defendant has waived [their] right to be present." *State v. McCrimmon*, 187 Ariz. 169, 171 (1996). Because there's no evidence Gomez knew of her *actual* trial date, we reverse her convictions and sentences and remand for a new trial.

---

[1]　　　Judge David B. Gass was a sitting member of this court when the matter was assigned to this panel of the court. He retired effective June 30, 2026. In accordance with the authority granted by Article 6, Section 3, of the Arizona Constitution, and under A.R.S. § 12-145, the Chief Justice of the Arizona Supreme Court has designated Judge David B. Gass as a judge pro tempore in the Court of Appeals for the purpose of participating in the resolution of cases assigned to this panel during his term in office and for the duration of Administrative Order 2026-87.

**FACTS AND PROCEDURAL HISTORY**

¶3          In April 2019, the State charged Gomez with two counts of aggravated driving under the influence (driving with a suspended license). Gomez hired attorney Arja Shah to represent her. Both Gomez and Shah appeared at the initial pretrial conference in June 2019, during which the court set a final trial management conference ("FTMC") for August 28, 2019 and a trial for September 9, 2019. The court told Gomez that "a defendant's failure to appear at the [FTMC] or the trial may result in a bench warrant being issued for his or her arrest and the FTMC and trial being conducted in the defendant's absence."

¶4          In August 2019, the court granted Shah's written motion to continue the trial. The court reset the FTMC first to October 24, 2019, then later accelerated it to October 21, 2019 and set a rescheduled trial date for November 13, 2019 via minute entry. Shah appeared at the rescheduled FTMC, but Gomez did not. Shah told the court she wasn't sure "what's going on" because Gomez "ha[d] always been really good about contact and [Shah] c[ould]n't reach her." The court issued a bench warrant for Gomez's arrest.

¶5          Also at the FTMC, Shah told the court that trial was "not anything that [she] had anticipated" and asked to withdraw. The court told her to file a written motion. Shah then moved, in writing, to continue the trial based on a scheduling conflict with another trial. The court denied the motion. Eight days before trial, Shah moved in writing "to withdraw as attorney of record for trial purposes and to substitute" Aaron Burroughs as Gomez's counsel. The court granted Shah's motion.

¶6          Gomez didn't appear at the rescheduled trial. As trial began, Burroughs told the court he didn't know where Gomez was. The court noted that, at the June 2019 initial pretrial conference, Gomez received notice of the September 2019 original trial date and that her failure to appear might result in the trial being conducted in her absence. It found her absence voluntary because "she had actual notice of the date and time of the proceeding, notice of the right to be present, and notice that the proceeding would go forward in her absence." The court made no finding about Gomez's knowledge of the rescheduled November 13, 2019 trial date. Burroughs objected to proceeding *in absentia* and moved to continue "so that the defendant has the right to confront her accusers and to be present for trial." The court denied that motion and proceeded with trial.

¶7         The jury convicted Gomez of two counts of aggravated driving under the influence. It also found she was on probation at the time of the offenses, and the court found she had two historical prior felony convictions. The court ordered that sentencing "commence" upon Gomez's apprehension and reinstated Shah as defense counsel.

¶8         Police arrested Gomez four-and-a-half years later. At a hearing after her arrest, Gomez appeared confused. After the court set a sentencing date and asked if Gomez had any questions, she responded "[w]hat does that mean? . . . The sentencing. I don't understand. Do I already have a sentence or something?" Gomez added, "I didn't even have a plea bargain yet." The court explained that she was "past the point of pleas" because "the trial has already happened." The court then appointed another attorney to represent Gomez and set a status conference "to make sure that [she] ha[d] representation." When Gomez asked "[d]o I even know what that is? Am I going to get paperwork on that?", the court responded "[e]ventually," adding the next steps that would occur.

¶9         During a status conference before sentencing, Gomez's new attorney told the court his "only concern is this trial in absentia." The attorney told the court, "I just gotta try and at least satisfy myself that she absolutely wasn't told anything about, she didn't have a trial, she didn't have to show up for the trial." Before sentencing, the court ordered Shah to turn her records over to Gomez's new attorney and—at Gomez's request— also ordered that Shah "have <u>no</u> contact with the Defendant or Defendant's family."

¶10         At sentencing, Gomez's attorney told the court that the State "recognize[d] there's some errors in this case that happened before it got to all of us here, but they would like the sentencing to proceed and have it play out in the post-conviction relief . . . or appeal part of the case. . . . So that's – that's why we're going forward." The State didn't object to this characterization of its position and Gomez's attorney stated there was no legal cause not to proceed. The court sentenced Gomez to concurrent ten-year prison terms, with credit for 158 days of presentence incarceration. The court stated it would "consider doing something less than 10 [years], but at this point my hands are tied" because of Gomez's prior felony convictions and that she was on probation at the time of the offenses. *See* A.R.S. §§ 13-703(J), -708(C). Gomez timely appealed.

**DISCUSSION**

**I.    We Resolve Any Jurisdictional Question by Accepting Special Action Jurisdiction.**

**¶11**         "[W]e have an independent duty to ensure that we have jurisdiction before addressing the merits of any claim raised on appeal." *State v. Bejarano*, 219 Ariz. 518, 519 ¶ 2 (App. 2008). "A defendant may not appeal . . . if the defendant's absence prevents sentencing from occurring within ninety days after conviction and the defendant fails to prove by clear and convincing evidence at the time of sentencing that the absence was involuntary." A.R.S. § 13-4033(C). The State concedes that the court failed to "'give the defendant the opportunity to' prove [her] absence was involuntary to 'avoid waiving his or her appellate rights'" under A.R.S. § 13-4033(C) and *State v. Brearcliffe*, 254 Ariz. 579, 584 ¶ 16 (2023). *Brearcliffe* holds that:

> before the right to appeal is abrogated: (1) the defendant must receive notice that the right may be waived if his or her absence prevents sentencing from occurring within ninety days after conviction; (2) the waiver must be knowing, intelligent, and voluntary; and (3) the defendant must be provided an opportunity at sentencing to prove by clear and convincing evidence that the absence was involuntary.

254 Ariz. at 581 ¶ 1.

**¶12**         The State acknowledges that the court denied Gomez the "express opportunity . . . to offer evidence of the involuntariness" but argues that, because "Gomez'[s] absence . . . prevented her sentencing from occurring for almost five years after her conviction" we may lack jurisdiction over her appeal. It asks us to remand for a hearing under *Brearcliffe*. Gomez, on the other hand, says a remand is unnecessary because the State didn't meet its burden under *Brearcliffe* to prove she was provided proper notice of (and the right to be present at) her sentencing, as well as the consequences of her failure to appear.

**¶13**         We need not wade into this jurisdictional thicket. Even if we lack jurisdiction over a direct appeal, we may "treat the appeal as a special action and accept special action jurisdiction consistent with Rule 12." Ariz. R.P. Spec. Act. 11(e). Special action jurisdiction is proper for questions that are "tending to evade review" and when "the resolution of [the question]

will materially advance the efficient management of the case." Ariz. R.P. Spec. Act. 12(b)(5), (b)(7).

¶14        Because a defendant's absence at trial regularly leads to a delay in sentencing until the defendant is located, this issue tends to evade review. *See* Ariz. R.P. Spec. Act. 12(b)(5). Beyond that, remanding for a *Brearcliffe* hearing would resolve only the question of Gomez's absence between trial and sentencing, not the merits of her claim that trial shouldn't have proceeded in her absence. Such a review would cause unnecessary delay. We thus exercise our discretion and resolve any question about our jurisdiction by accepting special action jurisdiction. Ariz. R.P. Spec. Act. 11(e), 12(b)(5), (b)(7).

## II.    We Review De Novo Whether a Defendant Knowingly and Voluntarily Waived Their Right to Be Present at Trial.

¶15        The parties disagree about the standard of review that applies to a trial court's finding that a defendant's absence at trial was voluntary. Gomez urges de novo review; the State says our review is for abuse of discretion.

¶16        In 1984 our Supreme Court said, "[t]he finding of voluntary absence, and, therefore, the existence of a waiver of the right to be present, is basically a question of fact" and "[w]e will not upset a trial court's finding of voluntary absence, therefore, absent an abuse of discretion." *State v. Bishop*, 139 Ariz. 567, 569 (1984) (quoting *Brewer v. Raines*, 670 F.2d 117, 120 (9th Cir. 1982)); *see also State v. Goldsmith*, 112 Ariz. 399, 401 (1975) (applying abuse of discretion standard of review). More recently, our Supreme Court noted that "voluntariness is ultimately a legal question" and explained that "[w]e review de novo whether a defendant knowingly and voluntarily waived his right to be present at trial." *State v. Lehr*, 227 Ariz. 140, 145 ¶ 8 (2011); *see also State v. Fitzgerald*, 232 Ariz. 208, 213 ¶ 23 (2013) (quoting *Lehr*). To support its holding that voluntariness is a legal question, *Lehr*, 227 Ariz. at 145 ¶ 8, our Supreme Court cited *Campbell v. Wood*, 18 F.3d 662, 672 (9th Cir. 1994). But *Campbell* held "[t]he finding of a knowing and voluntary waiver is a *mixed* question of law and fact which we review de novo," presenting yet another wrinkle in determining the applicable standard of review. 18 F.3d at 672 (emphasis added).

¶17        These standards conflict, and our post-*Lehr* and *Fitzgerald* case law shows we've never grappled with this apparent change. *See, e.g., State v. Vallejo*, 260 Ariz. 352, 354 ¶ 6 (App. 2025) ("We review a trial court's determination on the voluntariness of a defendant's absence for an abuse

of discretion."); *State v. Contreras*, 258 Ariz. 326, 332 ¶ 19 (App. 2024) (same). We thus understand the parties' disagreement. The divergent standards imply a material difference between the way we review a superior court's finding that a defendant's absence is voluntary and the voluntariness of the defendant's waiver. But that dichotomy makes no sense because any case that requires us to review a trial court's voluntariness finding necessarily requires a review of the defendant's waiver itself. In either case, the ultimate question is whether a defendant waived a fundamental constitutional right. Considering this, and because the de novo standard is the most recent provided by our Supreme Court, we consider the issue de novo.

### III. The Record Doesn't Support the Trial Court's Finding that Gomez Voluntarily Waived Her Right to Be Present at Trial.

**¶18**  Rule 9.1 says "[t]he court may infer that a defendant's absence is voluntary if the defendant had (1) actual notice of the date and time of the proceeding, (2) notice of the right to be present, and (3) notice that the proceeding would go forward in the defendant's absence." Gomez's signed release order included warnings that she needed to keep in contact with her lawyer and that the case may proceed in her absence. That order satisfied Rule 9.1's second and third requirements, but not the first: actual notice of the date and time of the rescheduled trial. *Bishop*, 139 Ariz. at 570. And the court's voluntariness finding didn't rely on the release order, or anything besides the on-the-record advisement of the later-rescheduled trial date.

**¶19**  So what does "actual notice" under Rule 9.1 require? Despite some version of that rule existing for more than 50 years, *see, e.g.*, *State v. Pena*, 25 Ariz. App. 80, 80 (1975), there's no clear definition or test.[2] We know that when the defendant is present at a hearing where the judicial officer gives them their next court date that is not rescheduled, and then fails to appear at that provided court date, the notice is enough to proceed *in absentia*. *See Pena*, 25 Ariz. at 80; *State v. Bohn*, 116 Ariz. 500, 503 (1977).

---

[2]  A previous version of Rule 9.1 required the defendant have "personal" rather than "actual" notice. Ariz. R. Crim. P. 9.1 (2016). Effective January 1, 2018, our Supreme Court amended the rule, along with much of the Arizona Rules of Criminal Procedure. Ariz. Sup. Ct. No. R-17-0002 (Aug. 31, 2017). In doing so, it noted that "[p]rior case law continues to be authoritative, unless it would be inappropriate because of a new requirement or provision in these amended rules." *Id.*

¶20         Less clear are those situations when, as here, the defendant receives in-person notice of *a* trial date, but not *the* date on which trial actually occurs. In one case where defense counsel, relying on information from the defendant's girlfriend, proffered that he believed the defendant knew of the trial date, our Supreme Court said that "[e]ven if [a defendant] never actually received notice of the continued trial date, it was the [defendant's] duty under the conditions of his release to maintain contact with the court and/or his attorney as to the trial date and any changes in that date." *State v. Tudgay*, 128 Ariz. 1, 3 (1981) (cleaned up). But we later noted that this language in *Tudgay* is dicta. *State ex rel. Romley v. Superior Ct.*, 183 Ariz. 139, 143 (App. 1995). We then held that when a defendant escaped from pretrial detention, he "voluntarily absent[ed] himself from trial even without actual notice of the continued trial date, under circumstances that indicate[d] he would not appear even if he had known the new trial date." *Id.* at 144; *see also State ex rel. Thomas v. Blakey*, 211 Ariz. 124, 126–29 ¶¶ 10–21 & ns.2 & 5 (App. 2005) (defendant's voluntary deportation to Mexico was enough to determine that he wouldn't have appeared even if he knew the trial date).

¶21         Consider also *State v. Cook*, 115 Ariz. 146 (App. 1977). There, the superior court found a defendant's absence was voluntary "[o]n the basis of the information in the release order and defendant's actual notice" of an earlier trial date, even though the trial date was later rescheduled. *Cook*, 115 Ariz. at 148. On appeal, however, the majority concluded the record was insufficient to "support an inference that defendant's absence was 'voluntary'" and "remanded for a hearing to determine the reasons for defendant's absence at trial and at sentencing." *Id.* at 149–50. After a hearing on remand revealed that the defendant "made no effort to maintain contact with counsel" and avoided "all efforts of counsel to apprise him of the date of the subsequent trial," we later affirmed. *State v. Cook*, 118 Ariz. 154, 155 (App. 1978).

¶22         Reading these cases together, we conclude the superior court errs in finding a defendant had "actual notice" of a trial under Rule 9.1 when it fails to adequately inquire into, and make a record of, the facts surrounding the defendant's actual knowledge of the correct date of the trial. *Bishop*, 139 Ariz. at 570. What satisfies Rule 9.1's "actual notice" requirement will depend on each case's specific facts. But neither the superior court nor this Court can determine whether an absence is voluntary without adequate inquiry. *See McCrimmon*, 187 Ariz. at 171 (trial *in absentia* is appropriate "only where the record clearly shows that the defendant has waived [their] right to be present"). "Voluntary choice presupposes meaningful alternatives. Put another way, a voluntary waiver

of the right to be present requires true freedom of choice." *State v. Garcia-Contreras*, 191 Ariz. 144, 147 ¶ 11 (1998). The superior court failed to make an adequate record to determine whether Gomez had "meaningful alternatives" or "true freedom of choice." *Id.*

¶23 The current record, which does not show Gomez had actual notice of the rescheduled trial, doesn't support a finding that she wouldn't have appeared at trial if she knew the date. *Romley*, 183 Ariz. at 143. Though Gomez was responsible for keeping in touch with her attorney, *Bishop*, 139 Ariz. at 571, the record is silent on whether Gomez knew Shah had retained Burroughs to represent Gomez at trial, or that Gomez ever spoke with Burroughs.[3] Unlike *Tudgay*, Gomez's release conditions didn't specify that contact with her attorney was relevant specifically "as to the trial date and any changes in that date." 128 Ariz. at 3. And the record suggests that Gomez believed she didn't have trial. *See supra* ¶¶ 8, 9. The court erred by resting its voluntariness finding solely on the notice provided to Gomez in June 2019 of her September 2019 trial date and failing to conduct additional inquiry or address at all whether she knew about the rescheduled November 13, 2019 trial date. *See* Ariz. R. Crim. P. 9.1.

## IV. The Error Was Structural.

¶24 We next consider whether the court's error requires reversal. Gomez contends our review should be for structural error, while the State's brief argues abuse of discretion, with no mention of any type of error review. Structural error "affect[s] the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Arizona v. Fulminante*, 499 U.S. 279, 309–10 (1991). Because trial counsel objected to proceeding *in absentia*, harmless error is the other potentially appropriate standard. *See State v. Henderson*, 210 Ariz. 561, 567 ¶ 18 (2005). The harmless error standard requires the State to "show beyond a reasonable doubt that

---

[3] The criminal rules don't require a defense attorney seeking to withdraw or substitute new counsel to provide evidence of client consent or serve notice on the client. Ariz. R. Crim. P. 6.3; *compare* Ariz. R. Civ. P. 5.3(a)(2) (requiring an attorney in a *civil* case wishing to withdraw or substitute new counsel to provide the court with evidence of client consent or serve notice on the client and all other parties). This creates situations such as Gomez's where we can't tell from the record whether the defendant knew anything about the substitution (and thus with whom she should keep in contact).

the error did not contribute to the verdict." *State v. Dunbar*, 257 Ariz. 421, 426 ¶ 14 (2024).

**¶25** A defendant's right to be present for every stage of their trial is "[o]ne of the most basic" rights guaranteed by the United States and the Arizona Constitutions. *Illinois*, 397 U.S. at 338; Ariz. Const. art. 2, § 24. Error involving a defendant's involuntary absence from trial "may be subject to harmless error review" in some cases where the defendant is absent from a portion of the proceedings. *Garcia-Contreras*, 191 Ariz. at 148 ¶¶ 16–17. But when it undermines the integrity of the trial, such as where the defendant is absent from the entire trial, it "necessarily fall[s] within that category of cases requiring automatic reversal." *Id.* (citation omitted). Because Gomez was absent from the entire trial, structural error occurred. And where "structural error occurs . . . we automatically reverse the guilty verdict." *State v. Ring*, 204 Ariz. 534, 552 ¶ 45 (2003).

**¶26** Even applying harmless error review, our conclusion would be the same. Under harmless error review, the State must show "beyond a reasonable doubt that the error did not contribute to or affect the verdict or sentence." *State v. Escalante*, 245 Ariz. 135, 144 ¶ 30 (2018) (citation omitted). It fails to do so.

**¶27** To start, the State doesn't argue harmless error at all, thus undermining any suggestion that it made the required showing. The record also supports a holding that the trial court's error wasn't harmless. Before trial, Gomez maintained that she was not the driver of the car. A third party appeared at a settlement conference and told the court that he—and not Gomez—was the driver. Had Gomez been at trial, she may have testified that she wasn't driving, presented that third party as a witness, or otherwise directed counsel to cross-examine the State's witnesses about the driver's identity. Again, it is unclear on the record that Gomez knew Burroughs would be representing her or had ever met him, let alone discussed trial strategy with him. The State fails to show beyond a reasonable doubt that the error didn't affect the outcome. *Id.*

**¶28** The partial dissent disagrees with this structural error finding and would instead remand for a hearing to determine the voluntariness of Gomez's absence at trial. It says that *State v. Sainz*, 186 Ariz. 470 (App. 1996) "outline[s]" remand as the "appropriate process," and points also to the remand for factfinding that occurred in *Cook*. *Cook*, 118 Ariz. 154. And it questions our consideration of the inevitable delay that a remand would cause in holding that our exercise of special action jurisdiction is appropriate (a holding, we note, that's outside the partial dissent's scope).

10

¶29 We acknowledge the remands ordered in both *Sainz* and *Cook*, but disagree that remand is *required* when we find serious Confrontation Clause error as we do here. The partial dissent identifies no precedent from our Supreme Court requiring a remand under these circumstances, nor does any exist. And though we appreciate, as the partial dissent puts it, the "resources" that went into a "three-day trial . . . where eight witnesses took time to come to court and testify," we must weigh that against Gomez's right to a trial during which she can fully exercise her Sixth Amendment rights. Because the U.S. Constitution "recognizes higher values than speed and efficiency," *Stanley v. Illinois*, 405 U.S. 645, 656 (1972), Gomez's constitutional rights outweigh any concerns of judicial economy. We thus decline to remand for a hearing.

## CONCLUSION

¶30 We reverse Gomez's convictions and resulting sentences and remand to the superior court for a new trial.[4]

---

[4] Given our disposition of the case, we need not reach Gomez's alternative argument that the sentencing court separately erred by proceeding with sentencing despite having new facts before it, suggesting Gomez's absence at trial wasn't voluntary. *See Sainz*, 186 Ariz. at 473 ("If subsequently discovered facts show that a defendant's absence was not voluntary, then it is error to ignore the reality of the situation.").

**F O S T E R,** Judge, concurring in part and dissenting in part:

**¶31**　　　　I concur with the majority's analysis but disagree with the consequence that Gomez's convictions and sentence should be reversed and remanded for a new trial at this juncture. Instead, I would remand to the superior court for an evidentiary hearing to determine whether Gomez's absence at trial was voluntary or involuntary before determining that her rights were violated and structural error occurred.

**¶32**　　　　A criminal defendant has the right to be present at trial, but that right may be waived, and a voluntary absence operates as a waiver. *See McCrimmon*, 187 Ariz. at 171; Ariz. R. Crim. P. 9.1. It follows that there is no constitutional error — and no structural error — unless Gomez's absence was involuntary.

**¶33**　　　　In *Sainz*, this Court outlined the appropriate process to determine whether a defendant's absence was voluntary or involuntary. 186 Ariz. at 473. *Sainz* held that a court must determine whether the absence was voluntary by considering all the facts presented. *Id*. If the facts support that the defendant's absence was voluntary, no further inquiry is necessary and the court may proceed. *Id*. But if the facts suggest that the absence was involuntary, "the court then must determine if the defendant was prejudiced by the proceedings that occurred in his or her absence." *Id*.

**¶34**　　　　Courts have recognized that a defendant may voluntarily absent himself even without actual notice of a rescheduled date, where the circumstances show he would not have appeared in any event. *See Romley*, 183 Ariz. at 143–44; *Blakey*, 211 Ariz. at 126–29, ¶¶ 10–21; *Tudgay*, 128 Ariz. at 3. Whether Gomez's case falls within that category is unknown because the record does not provide adequate information to know it. Like *Cook* the question should be addressed by the superior court first.

**¶35**　　　　In *Cook*, the superior court found the defendant's absence voluntary based on a release order and his notice of an earlier trial date, even though the trial was later rescheduled. 115 Ariz. at 148. *Cook* concluded that the record was insufficient to support an inference that the absence was voluntary. *Id.* at 149. This Court "remanded for a hearing to determine the reasons for defendant's absence at trial and at sentencing." *Id*. at 149–50. It did not reverse automatically. The majority does not distinguish *Cook* from the facts in this case, instead only noting that remand is not required.

**¶36**　　　　The majority supports reversal by citing *Garcia-Contreras*. But *Garcia-Contreras* addresses the consequences of an established

constitutional violation, it does not demand reversal when it is unclear whether a violation occurred. 191 Ariz. at 148, ¶¶ 16–17. *Garcia-Contreras* begins with an understanding that the defendant's absence was involuntary; it does not decide *when* an absence is involuntary. *Id.* That question is still open here and therefore requires the superior court to make findings on Gomez's absence. Until the superior court determines that Gomez's absence was involuntary, *Garcia-Contreras's* automatic-reversal rule does not apply.

¶37 Finally, the majority suggests that remand would cause unnecessary delay. *Supra* ¶ 14. While I agree that it is unfortunate the trial court did not address this issue before sentencing, delay is not a reason for this Court to abandon the efforts that have already been made in this case. Here, a three-day trial ensued where eight witnesses took time to come to court and testify. It would be a greater waste of resources to proceed with a new trial when the facts could show that Gomez did have actual notice of the trial date or her absence was voluntary. As the majority notes, Gomez's rights are paramount, but courts should not throw out an entire trial without first determining whether the court afforded a defendant due process.

¶38 Thus, rather than reverse, this Court should vacate the superior court's finding that Gomez's absence was voluntary and remand for an evidentiary hearing to determine whether Gomez intentionally absented herself from trial—that is, whether her absence was voluntary within the meaning of Rule 9.1 and the cases that interpret that rule. If the superior court finds Gomez's absence involuntary, then I agree the error was structural and Gomez is entitled to a new trial as provided by *Garcia-Contreras.* In that circumstance, the superior court would proceed with a new trial. If instead the superior court finds Gomez voluntarily absented herself, her convictions and sentences can stand without a new trial.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**: JR